UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WATKINS MOTOR LINES, INC.,

        Plaintiff,

v.                                                       CASE NO. 8:05-CV-341-T-24MAP

CARI M. DOMINGUEZ,
chair of the Equal Employment
Opportunity Commission, and
UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

        Watkins is a national less-than-truckload transportation company headquartered in Lakeland, Florida with terminals throughout the United States. The EEOC is actively investigating a claim that Watkins failed to hire a job applicant at its Schaumburg, Illinois facility for racial reasons, a claim Watkins strenuously denies. Despite the fact that the EEOC has not concluded its investigation, Watkins filed this action for declaratory and injunctive relief, or alternatively a writ of mandamus. It further moves for preliminary injunctive relief asking this Court to: (1) restrain the EEOC from conducting further administrative proceedings or issue compulsory process for ten days so as to maintain the *status quo* and purportedly avoid irreparable harm to Watkins; (2) compel the EEOC to accept its settlement offer; (3) terminate the EEOC *ultra vires* investigation of Watkins for want of jurisdiction; or (4) retain jurisdiction and monitor the EEOC's actions to resolve this matter without the necessity for the Court to reach the merits of the issues for decision in this case (docs. 3 and 4). Given the administrative status of the affair, the real issue is whether this matter is even

ripe for judicial intervention. After a hearing on Watkins's motion, I find that it is not and recommend the district judge deny Watkins's request for a preliminary injunction.[1]

   *A. Background*

The relevant facts are not in dispute. In early August 2004, Lyndon Jackson, a convicted sex offender, applied for a job as a freight handler at Watkins's Schaumburg terminal. When Watkins rejected him, he filed a charge with the EEOC's Chicago office complaining Watkins failed to hire him because of his race (African-American). Watkins denied this and told the EEOC it justifiably rejected Jackson due to his prior conviction for a violent crime, the company's desire to promote worker safety and negate the potential for violence at is facilities, and concerns about Jackson's experience and availability. Despite Watkins's position, the EEOC continues to investigate and has conducted site inspections of documents at the Schaumberg terminal and issued an administrative subpoena for more documents.[2] That subpoena is still outstanding.

In February 2005, Watkins proposed settling the matter. It informed the EEOC it would formalize its hiring policy regarding the use of conviction records but still deny violent felons employment. The EEOC found the offer unacceptable (doc. 18, ex. 11). Watkins immediately filed this lawsuit for declaratory and injunctive relief (docs. 2, 3, and 4). In summary, Watkins contends: the EEOC's regulatory scheme makes it duty-bound to accept all reasonable settlement offers; Watkins's offer is reasonable; therefore, the EEOC must accept the offer; besides, the EEOC's

---

[1] The district judge referred this matter to me for a report and recommendation (doc. 6). *Ss* 28 U.S.C. § 636 and Local Rule 6.01(b).

[2] There exists substantial disagreement as to the requested documentation and reasoning behind the requests; however, those issues are not relevant to this discussion. I also note that as of the hearing date, the time for complying with the EEOC's subpoena has not expired.

investigation is disingenuously based on a flawed principle – that an employer cannot refuse to hire convicted felons because doing so adversely impacts African-Americans and Hispanics. Confronted by all this, the EEOC counters its investigation is continuing and the dispute is not ripe for judicial intervention.[3]

*B. Discussion*

The ripeness doctrine is a justiciability doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat. Park Hospitality v. Dept. of Interior,* 538 U.S. 803, 807-808 (2003) quoting *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148-149 (1967). Its roots are Article III's limitations on judicial power and the traditional and prudent restraints for exercising judicial power. 538 U.S. at 808. Assessing if an administrative action is ripe for judicial review focuses on two factors, the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. *Id.* Neither factor weighs in Watkins's favor.

In *Mississippi Chemical Corp. v. EEOC*, the Eleventh Circuit confronted the same issue this case poses: "whether an employer may litigate the validity of a commissioner charge before the EEOC seeks to enforce a subpoena based upon the charge." *See* 786 F.2d 1013 (11th Cir. 1986). The Eleventh Circuit answered no; that answer applies here.

The facts in *Mississippi Chemical* are remarkably similar. As with Watkins, the EEOC had

---

[3] The EEOC has filed a motion to dismiss pursuant to Rule 12(b)(1) in which it makes the same arguments as it makes against the motion for preliminary injunction (doc. 34).

3

not finished its investigation. And, as with Watkins, the EEOC subpoenaed documents about the firms's employment practices. Instead of complying with the subpoena, Mississippi Chemical filed suit in the district court demanding the court halt the inquiry. The court stayed the proceedings for thirty days so the EEOC could enforce the subpoena. When the EEOC took no action, the court dismissed the lawsuit for lack of ripeness. Mississippi Chemical appealed, and the Eleventh Circuit affirmed. In reaching its decision, the court applied the ripeness factors, determined the EEOC had not issued a "final agency action," and found Mississippi Chemical's burdensome claims without merit. *See also Venetian Casino Resort v. EEOC,* 360 F. Supp. 2d 55 (D.D.C. 2004) (EEOC's issuance of administrative subpoena was not a "final agency action" within the meaning of the Administrative Procedures Act and plaintiff's requests to restrict scope of subpoenas therefore were not ripe); *Bell Atlantic Cash Balance Plan v. EEOC,* 976 F. Supp. 376 (E.D. Va. 1997), *aff'd* 182 F.3d 906 (4th Cir. 1999) (plaintiffs "jumped the gun" in petitioning for a declaration of non-discrimination before EEOC had completed its investigation and assessment of discrimination charges).

      Watkins tries to distinguish *Mississippi Chemical* by asserting that case dealt with subpoenas while its case pivots on the EEOC's rejection of its reasonable settlement offer. By rejecting its appropriate settlement proposal, Watkins maintains the agency violated governing policies and procedures. Thus, Watkins banks its legal argument on its premise that the EEOC, without consideration to the status of the investigation, must promptly accept any seemingly reasonably offer. *See Kabeller, Inc. V. Busey*, 999 F.2d 1417, 1422 (11th Cir. 1993) ("judicial review is available where the administrative agency fails to follow procedures outlined in regulations adopted by that administrative agency"). But the EEOC counters nothing in Title VII requires the agency

to accept a settlement before finishing the investigation and determining whether reasonable cause exists to believe discrimination occurred.  Further, the EEOC asserts nothing in Title VII demands the agency to accept the settlement terms exactly as offered (doc. 18, p. 11).  Indeed, a reasonable reading of EEOC's policies supports the agency's position, namely, settlements are encouraged but must be evaluated in keeping with the EEOC's mission: "That settlement efforts be encouraged at all stages of the administrative process and that the Commission *may* accept settlements providing 'substantial' relief when the evidence of record indicates a violation or 'appropriate' relief at an earlier stage in the investigation."*See* 29 C.F.R. § 1601.20(a)(emphasis added); (doc. 24, ex. 2). Watkins apparently reads "may" to mean "must."  Watkins's premise for its legal argument fails.

Watkins tacitly recognizes the force of its ripeness difficulties because it pins much of its arguments for judicial intervention on an exception to the ripeness doctrine that courts rarely use. In *Leedom v. Kyne*, 358 U.S. 184 (1958), the Supreme Court acknowledged having jurisdiction where the National Labor Relations Board ("NLRB") deprived employees of bargaining rights given to them by Congress.  The NLRB's actions in *Leedom* went against statutory directives and exceeded its delegated powers.  The Court held that in circumstances such as that, federal courts have the power to intervene and enforce the rights in question.  But courts seldom invoke *Leedom*'s exception. *See United States v. Feaster*, 410 F.2d 1354, 1368 (5th Cir. 1969) (the *Leedom* exception is "narrow and rarely successfully invoked" and the agency error must be of a "summa or magna quality as contraposed to decisions which are simply cum error.")[4]; *Bell Atlantic, supra,* 976 F.

---

[4] The Eleventh Circuit in an *en banc* decision, *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Supp. at 381-383 (recognizing the narrowness of *Leedom* exception and refusing to apply it where plaintiff alleged EEOC committed error when EEOC investigated discrimination charges that plaintiff considered facially invalid).

The EEOC's rejection of Watkins's offer in the midst of an investigation does not approach *Leedom's* exception, particularly given the EEOC's policy statements that it is "not required to engage in negotiated settlement before a finding and will do so on a case-by-case basis" (doc. 18, ex. 7). Notably, Watkins fails to cite any authority suggesting that the EEOC's rejection of a settlement offer during an ongoing investigation constitutes a final action as contemplated under the Administrative Procedure Act. In short, the EEOC has issued no formal finding about Watkins's conduct. Further, Watkins fails to make a meaningful case that it will suffer some hardship unless this Court intervenes as asked. *See Bell Atlantic, supra* at 976 F. Supp. 381 ("while an investigation may reasonably cause a company like [plaintiff's] to incur some burdens during the course of that investigation, such burdens are not indicia of a final or reviewable agency action; they do not amount to the type of concrete , significant hardship that triggers judicial review").

*C. Conclusion*

For these reasons, it is hereby

RECOMMENDED:

1. Watkins's Motion for Preliminary Injunctive Relief (doc. 3) be DENIED.

IT IS SO REPORTED at Tampa, Florida on April 26th, 2005.

*Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

  Failure to file and serve written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice.  28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*

cc: Counsel of Record